I please the court Barclay-Samford v. Appelton, United States Department of Agriculture. If I may, I'd like to reserve three minutes for rebuttal. Alright. This case presents a facial challenge to three provisions of the Forest Services Regulations governing administrative appeal of forest service decisions. A nearly identical case to this was heard by, challenging the same regulations, was heard by this court in Earth Island v. Rutenbeck and by the Supreme Court in Summers v. Earth Island. This case was stayed pending resolution of those cases and those cases now resolved compelled the district court's opinion in this case to be reversed. Just to get the timing straight then, when Judge Malloy issued his order on the merits, which was March of 2006, so that was three or so years before the Summers case came out. Is that right? That's right, Your Honor. And so those cases, the Rutenbeck and Summers compelled reversal here. First, Summers compels reversal because it makes clear plaintiffs don't have standing during this case. Rutenbeck compels reversal because it makes clear plaintiffs' claims are not right. And should this court turn to the merits, district court's opinion should be reversed because all three of the provisions at issue are reasonable interpretations of the intent of Congress in the Appeals Reform Act, or ARA. Turning first to standing, as was the case in Summers, plaintiffs here bring a facial challenge to these regulations, a challenge that is not tethered to any specific right, case, or controversy about an application of the regulations. And the Supreme Court in Summers found very clearly that without such a case or controversy, an application of the regulations, and an explicit declaratory statement of plaintiffs' intent to return and use the area that would be impacted by that decision, plaintiffs did not have an injury in fact sufficient to establish standing. It seemed, we'll have to obviously ask the Council for the Wilderness Society, but it did seem that there was one regulation tied to a project potentially, and that was the 215-12. That's right, Your Honor. Plaintiffs, although not in their complaint, plaintiffs do mention in a declaration from Mr. Anderson a particular project called the Ash Creek Project, which was promulgated under one of the regulations at issue here. We would submit that under Summers, that's not a live case or controversy sufficient to give plaintiffs standing for several reasons. First, it wasn't named in their complaint. Second, that decision was not issued at the time that they filed their complaint. Third, they never amended their complaint to add it in or try to enjoin the project, and consequently that project was finished prior to the district court, Judge Malloy, issuing his decision. Finally, the declaration at issue here from Mr. Anderson does not give any specific future indication that Mr. Anderson intends to return to the Ash Creek Project area. So we would suggest that just like the Burnt Ridge Project in Summers, the Ash Creek Project here does not give plaintiffs a case or controversy sufficient to establish injury in fact. Plaintiffs' second allegation of injury here is informational injury. So the Ash Creek Project relates to recreational injury. The second species of injury is informational injury. We would suggest that that was also disposed of by the Supreme Court in Summers. Now, to be sure, there's a semantic argument here. Plaintiffs in Summers said we have a procedural injury. Plaintiffs here said we have an informational injury. We would submit to the court that the types of injury being alleged are the same. Specifically, you have not followed the procedures that Congress directed you to follow, and therefore we are deprived of certain information that we believe we have a statutory right to. The Supreme Court in Summers said this procedural injury in a vacuum cannot give you standing, cannot give you injury in fact. You still have to have a specific application of the regulation to a project that causes you harm and a specific intent to return to that project area. Now, there is a narrow line of cases which do recognize an informational injury in other contexts. The Supreme Court's case in Aikens is sort of the seminal case in that regard. We would submit that those cases which find informational injury sort of in a vacuum are cases where Congress has created a specific statutory right to that information. So, for example, FOIA, the Freedom of Information Act, or FACA, the Federal Advisory Committee Act, which was an issue in Public Citizen versus the Department of Justice, or the Federal Election Campaign Act, which was an issue in Aikens. No court that we're aware of has ever found an informational injury based on violation of a broader public participation statute like NEPA or like the ARA. In fact, the only case we're aware of on point is the Seventh Circuit's decision in Bensman, which was founded 408 Bed 3rd, 945. In that case, the Seventh Circuit considered the ARA, considered a claim that the ARA allowed for informational injury and rejected it. Found that comparing it to Aikens, comparing it to Public Citizen, there was not a specific congressional intent to convey an informational injury to plaintiffs. We would therefore submit to the Court that Summers is controlling and that this case should be reversed on standing grounds. With regard to ripeness, the touchstone is Lujan versus National Wildlife Federation, which states that a regulation is ordinarily not right until it's been fleshed out by concrete application to the plaintiffs in a way that harms them. The two exceptions to that are when Congress creates a special review provision that says you get direct review of the regulation, or, as was the case in Abbott Labs, where the plaintiff suffers an immediate harm. In Abbott Labs, it was an immediate dilemma. Do you follow the regulation or do you face civil or criminal penalties? In this case, Ruthenbeck considered these regulations on ripeness grounds where plaintiffs had challenged one project and eight different parts of the regulations. This Court found that the six parts of the regulations which were not applied to the Burnt Ridge Project in Ruthenbeck were not right. They were speculative. They needed further factual development through application of the regulation. We would submit that that should apply to the three regulatory provisions at issue here. Now, plaintiffs have made some attempts to fit themselves in to the Abbott Labs exception where they suffer immediate harm. In this case, plaintiffs have suggested they suffer immediate harm because they've been forced to undertake a monitoring burden, increased expense in monitoring the activities of the Forest Service. I think this fails for several reasons. First of all, in Ruthenbeck, this Court didn't find any immediate harm like the Abbott Labs context. Second, the Abbott Labs case law suggests that you need to be the regulated party and you need to suffer immediate hardship on the lines of criminal penalties or civil sanctions. That was also the case in the Freedom to Travel case in this circuit where the Court found in dealing with regulations with travel to Cuba that plaintiffs faced immediate criminal or civil penalties for violation of the regulations. Here, plaintiffs may have an increased burden of monitoring the Forest Service, but the Supreme Court, I think, has rejected that sort of claim as making your case right. In Ohio Forestry, for example, the Supreme Court said the fact that your litigation is going to be more expensive because now you have to bring multiple site-specific projects does not make your case right. In Lujan v. National Wildlife Federation, the Court said the fact that it's going to be more burdensome because now you have to find particular projects rather than a broad program to challenge does not make your case right. In the National Hospitality Association case, which was a challenge to regulations that dealt with National Park concessionaires, the concessionaires sued saying this regulation is going to make it more expensive for us to make contracts with the government because they think this contracting law doesn't apply. The Court said this increased expense to you does not make your case right. So I would submit to the Court that plaintiffs' increased monitoring burden, if they have one, is not the sort of injury, like in Abbott Labs, that would make their case right. Let me turn very briefly to the merits. In the ARA, Congress directed the Forest Service to promulgate a system of notice and comment and to amend its appeals system. Congress gave the Forest Service this skeleton or the outlines of that system, but it left it to the Forest Service to make that system work, to fill in the gaps, to resolve ambiguities. The Forest Service, we believe, has done so here, and under the Supreme Court's doctrine in Chevron, this Court should defer to those interpretations so long as they're reasonable. You and I and plaintiffs may have written different regulations, but as long as the Supreme Court's regulations are reasonable, they deserve this Court's deference. With regard to Section 215.20B, which is the exemption of direct secretarial decisions from appeal, Congress doesn't speak directly to this issue. So we're at Chevron Step 2, asking whether the agency's regulation was reasonable. He would state that it is. First, under Section 322C, the ARA speaks to appeals from decisions of the Forest Service. In 322D, Congress directs an appeal system that requires an appeal reviewing officer and an appeal decision maker, two separate individuals, who are at or equal to the level of the decision maker. In the Department of Agriculture, there's nobody at or equal to the level of the secretary, and only the secretary is above the undersecretary. So it's impossible to create a system that matches what Congress had dictated, that would allow the secretary and the undersecretary to have someone equal to them or above them reviewing their decisions. Moreover, it would be anomalous to have underlings reviewing their subordinates. So we would submit that this practice, this regulation, is reasonable. With regard to substantive comments, the Forest Service has required people who participate in the public comment process to submit substantive comments in order to have standing to appeal in the appeal process. This is clearly the intent of Congress. When you look at the congressional record, Congress made very clear that there was a concern about plaintiffs using the appeal process in a way that was obstructionist. And the senators made very clear in the final colloquy, not in earlier debates, but in the final colloquy on the final bill, they described this provision as a standing provision. You need to be involved in the process up front in order to avail yourself of an administrative appeal. We would submit that's a perfectly reasonable interpretation. Finally, with regard to 215.12F, which is the provision that says projects issued under a NEPA categorical exclusion do not receive appeal, the ARA says that appeals are to be provided for projects and activities implementing a forest plan. There's no controversy today that that, as written, is incredibly broad. It would include mowing the lawn at the ranger station, painting the ranger station, closing roads when there's a fire, a whole ambit of activities, which plaintiffs don't contend should be subject to notice, comment, and appeal, which the district court didn't contend should be subject to notice, comment, and appeal. So Congress left a gap. Congress left a place for the Forest Service to draw a line between projects that get appeal and projects that don't. The Forest Service chose to draw that line based on environmental significance. If a project may have a significant impact and therefore got an environmental assessment or environmental impact statement under NEPA, then it gets an appeal. If it doesn't have that impact, it doesn't get an appeal. It's a reasonable line we would submit. It may not be the line that you or I or plaintiffs would have drawn, but it's a reasonable one to which the court should defer. I therefore reserve the remainder of my time if I may. Thank you. Well, it looks like your case shifted on you a little bit during the state period, so perhaps you can start with how Summers, in your view, does or does not change the situation you find yourself in. Yes, Your Honor. Timothy Presso for the Appalachian Conservation Organizations. Let me start right out with Summers because I understand that from the court's perspective, obviously the intervening Supreme Court precedent is important and significant, and you need to understand how it applies or does not apply. And the first thing I want to say to you is that the government is not asking this court for a straightforward application of Summers. The government is asking the court for an extension of Summers to situations that Summers did not address in circumstances where applying Summers would contravene other Supreme Court authority. And let me be specific. Summers did not address the issue of informational injury at all. In fact, the government tries to suggest to the contrary with some stray comments from oral argument, but if you look at the transcript the government cites, in the end the counsel for the conservation organizations in Summers explicitly said they were not relying on that line of informational injury authority. So the Supreme Court's opinion does not address Summers. It was not something that was relied upon by the organizations, the plaintiff organizations in that case, and it's simply not within the ambit of the holding in Summers. Now, the government says, well, they didn't use the word informational injury, but it's just a semantic debate because they talked about procedural injury. Those are two analytically distinct things, and that distinction needs to make a difference here. In the procedural injury context, the Supreme Court has been clear. In Lujan v. Defenders of Wildlife and in Summers and other cases, that a deprivation of a procedure does not constitute injury in fact unless you have a separate injury to a concrete interest that accompanies the procedural harm. But in the informational injury context, if you look at the Supreme Court's decisions in Federal Election Commission v. Aikens and the public citizen case, the Supreme Court has said that the deprivation of statutorily required information is itself, quote, concrete and particular injury without the need for anything else. What case is that? Federal Election Commission v. Aikens, 524 U.S. at page 21. Well, did that deal with a statute that required particular information to be given and it wasn't given? It did, Your Honor. It involved the Federal Election Campaign Act and the registering of organizations as political committees pursuant to that act. Was there particular information here required by the ARA that was not given? Indeed, there is, Your Honor. That's a really important point. The government says, well, no court has held that the Appeals Reform Act provides this kind of informational right. In fact, the Appeals Reform Act is quite clear in saying that the Secretary shall give notice of projects in the national forest system. Isn't that a little different? I mean, I think counsel likened, and it may be that the FEC case is more similar to the FOIA-type cases in terms of the nature of the statute. Do we have any prior cases that would suggest this giving of notice, which seems to me to be a procedural aspect more than informational, where that would fall? Well, first let me just ‑‑ I want to just push back a little bit on that, if I can, Your Honor, because I think this statute is fundamentally about public oversight of national forest management activities and public participation in those activities. And information to the public is inherent in that scheme working effectively. But to answer your specific question, I think if you look, the government's counsel said that no court has ever held a statute like this has informational ramifications. But if you look at the Seventh Circuit's Heartwood case, which is cited in our brief, the Seventh Circuit found that NEPA, the National Environmental Policy Act, which similarly calls for public involvement in, comment on, review of, public environmental management decisions, does convey an informational right. Now, government counsel says, well, yes, but when the Seventh Circuit got around to looking at the Appeals Reform Act, which is at issue in this case, it said there's no informational right sufficient to give rise to informational injury. And I think obviously it's important to this court to know what a sister circuit did, and I want to discuss that for just a moment and explain to you why what the Seventh Circuit said was wrong. What the Seventh Circuit said was there's no informational injury under the Appeals Reform Act because under the statute, and let me find the exact language, they said that the Appeals Reform Act does not guarantee or promise to yield any factual information, and the deciding officer might not even make a decision with respect to the matters raised on appeal. Well, the problem with that line of reasoning, to dispose of an informational injury argument, is you've got to go back to the Supreme Court precedents in this informational injury context. And if you look at Federal Election Commission v. Aikens, and you look at Public Citizen v. Department of Justice, the Supreme Court explicitly noted that it was possible that the information disclosure requirements might not ultimately yield the factual information that the plaintiffs were seeking, but that was not the relevant inquiry. In FEC v. Aikens at page 25, the Supreme Court recognized that, quote, it is possible that even had the FEC agreed with Respondent's view of the law, it would still have decided in the exercise of its discretion not to require APAC to produce the information. There's a similar discussion in the Public Citizen case. But the Supreme Court said that is not the standard to determine informational injury. You know, I'm having just a little bit of this sort of intellectual tension between informational injury and procedural injury. So in procedural injury, you're supposed to tag that to a particular project or something that's going on. And if instead you could, if you took informational injury as large as you suggested, wouldn't it in effect eclipse procedural injury? Because you could always, if you couldn't tie it to a particular project, you'd just say, well, it's not really procedural injury, it's informational injury because, although the net result may be the same, in other words, I don't have access to something or I'm being blocked out or precluded. So why wouldn't you run into that problem? How would you solve so that one didn't collapse on the other? I think the relevant inquiry has to be what is the statutory right that's conveyed to the public. And that has to provide the limiting principle. But here we have a statute that specifically demands public notice for this precise purpose of conveying information to the public about what the Forest Service is doing to manage the public's lands and then asks the public to respond to that and then ultimately gives the public a right to appeal and to receive from the Forest Service a better explanation of what the Forest Service is doing and why it's doing it. And I think that, Your Honor, is a distinction with a difference, that the Appeals Reform Act gives an informational right that's different in kind from just broad, you know, any kind of broad public involvement statute. So the – in a way, you're severing off the initial notice from the follow-on procedural rights that you get once you get the notice and say, okay, now I've got a problem? I mean, that's where I'm having – Well, the notice is the clearest point in the statute that conveys an absolute right to information. The other part of the statute that conveys a right to information is that the statute mandates that the Forest Service decide appeals and issue a decision that informs the public, here's how we disposed of your concerns, here's what we said, and here's how we explain our decision. And as Judge Malloy ruled in the – That's where I'm having this trouble. Like, that seems to me to be really – that's where you get into almost some kind of teleological discussion of, well, is that an informational right or is that a procedural right that they need to issue a decision that has a rationale? Well, but, Your Honor, respectfully, I don't think it's any different than, for example, this Court in Demando v. Morris, which is a case about disclosure of agreement in a credit situation. Again, it was just about – here's – the point was that the statute required disclosure of the terms of the contract, and this Court found an informational right, and here it's – the Forest Service is required to disclose the reasons for its decision. I'm not sure there's a way to really draw that line, and I think – I'm not – I submit it's not appropriate to draw that line because fundamentally what Congress is trying to resolve here, if we look back at the legislative history, was public participation and overview in a kind of a sunshine law way of national forest management, and that – and you can't do that unless you have information about what the Forest Service is doing and why it's doing it. So just to go back, then, to your informational injury point, what do you think are the best cases for which we can connect informational injury to standing? Well, I think, Your Honor, the answer is the Federal Election Commission v. Aikens, the public citizen, and finally, the Havens Realty case, which I raise for an important reason, which is government counsel made the point that increased monitoring burdens don't really count. That shouldn't make any difference. Well, in the Havens Realty case, which is another informational injury case, the Supreme Court specifically relied upon increased burdens of monitoring and diversion of public resources to deal with the deprivation of information as an injury, in fact, sufficient to confer standing. And we submit if the Supreme Court set it in Havens Realty and has never overruled it, it's not open to the government to contend that that kind of injury doesn't count under Article III at this time. Your Honor, I also want to talk about the ripeness issue, which government counsel relies on. The government's real position here, and what they've been trying to do in this line of cases, is essentially to make facial challenges impossible outside the Abbott Labs context, where you have an ‑‑ Well, that was a concern. That's a question I have for them, actually. The basic position is unless you face the choice to either comply or be fined or somehow otherwise sanctioned, there's no such thing as a facial challenge. But that is not the law. That's not the law that this Circuit has applied, and it's not the law that the Supreme Court has applied. And, for example, in the Center for Biological Diversity case, which this Court decided, post Summers, this Court addressed a facial challenge to regulations without the requirement of this choice to comply or face sanctions, and the Court specifically said, yeah, that choice to comply or face sanction is the primary exception to the point that regulations are not normally subject to challenge, but it's not the only exception. And they went on to point out that where the regulation presents you with otherwise significant harms, that's enough. And here we have the increased burden. Let me ask you about that, because if we have kind of a thin affidavit or declaration here, but if you had somebody, and you have a specific project, and this person's been going there for years, and they intend to go there, and they're very concrete about it, why wouldn't that give them standing and you wouldn't have this ripeness problem? I think it does. I mean, I think our affidavits do establish this kind of long-term use. I'm not sure, am I responding to your question? Well, I mean, because the cases, like Earth Island, is sort of a foundation for some of those principles. Yes. And it seems that it's not only that I've been there and used it, but that I have some continuing going back or plan to go back, because otherwise it's history, and the ripeness intervenes there. So I was wondering about your declaration about meeting that criteria of something a little more concrete. Well, in all candor, obviously, our declarations were crafted before summers came down, and obviously we didn't have summers in mind. That said, the declarations remain sufficient to get us through the Article III obstacle course in this case. They do evidence a continuing plan for future use. I would also say, and very important under the ripeness issue, they evidence a long-term commitment to participation in this Forest Service Notice, Comment, and Appeals process, and an intent to continue to utilize that process. I think that's very relevant under Judge Hall's opinion in the Freedom to Travel Campaign case, this firm prediction doctrine that was adopted in this circuit in that case. If the court can make a firm prediction that a regulation will be applied in a way that will deprive the plaintiff of a benefit, a sought-after benefit, that is enough to establish a ripe controversy. It's not just this circuit standing out there in isolation, either. The Supreme Court has gone down that road as well. If you look at the Thomas v. Union carbide case, but perhaps the most explicit statement goes back to a Supreme Court case, and this is not in our briefs, and I apologize. They call it, the Supreme Court refers to them as the railroad reorganization cases, but the caption is actually Blanchett v. Connecticut General, 419 U.S. at 143, and the quote is, where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect. Never been overruled. That remains the law to this day. Similar to our case out of Alaska having to do with the enforcement of the housing. Let me just go back. If because Summers intervened and the landscape changed, and it turned out that you don't have standing here, but you now know what Summers says and you can have your clients be more specific, would you be able to go back at this point and challenge these regulations? I think the answer is probably yes, in all honesty. But I guess what I would want to come back to is. I'm not saying that's your only option. I'm just asking as a practical matter. We could do that, but we shouldn't have to. This case has been around since 2003. It's been thoroughly heard before a district court judge who issued a well-reasoned opinion. I haven't even gotten to address the merits of my time expiring, so I probably won't. But this case presents a legitimate challenge to these regulations, and that ought to be enough. These regulations have been in place for many years, and there have been a lot of projects that have been excluded from public involvement under them as a result of this tortured procedural history, and it's time to set that injustice right. Let me just say in my brief closing seconds, the government wants you to rely on Summers to find no standing, claiming it covers informational injury. The government wants you to rely on Summers to determine no ripeness, claiming there's no hardship. Summers did not resolve either of those issues. Those issues are for this court to decide. Based on this record, they are not closed off to you by Summers, and we respectfully ask that you affirm the decision below. Thank you. Thank you. Let me just start with the question that has troubled me, and that is how if we take Summers and some of these others to have a broad extension, how does one go about making a facial challenge to regulations? I think, Your Honor, that the Supreme Court in Wuhan versus National Wildlife Federation answers that question very clearly. One goes about it by either having a direct congressional authorization to challenge the statute directly, or one finds an immediate injury from the application of the statute, and doing that allows one to challenge the statute. The Supreme Court, I think, has road mapped it very carefully. If I may, I'd like to start with the Court's last question and then hopefully touch on informational injury and ripeness. This Court's last question is dispositive. Plaintiffs here are not harmed. They can go out and find a project that they believe impacts them, and they can challenge that project, and through their challenge of that project, have the concrete injury that gets them to the regulations at issue. With regard to informational injury, I'd like to make three points. The first is that when plaintiffs talked about informational injury, they talked about the lack of notice. But no notice provisions are before this Court on appeal. All that is before this Court on appeal are administrative appeal provisions, their right to appeal, not their right to notice. The government has not appealed from its loss on the notice provision in the district court. Therefore, what plaintiffs are talking about is strictly procedural, not informational. Second, with regard to the merits of an informational injury, I think this Court's question about Can I go back on that about the notice issue? Since you didn't appeal from that, what does that mean? It means that the government is prepared to live with the district court's finding that you must give notice of secretarial decisions. Correct. And as to ripeness, of course, plaintiffs have never identified a secretarial decision made under these regulations that's harmed them in any way. But I commend to the Court the D.C. Circuit's opinion in foundation on Economic Trends v. Ling, which is 943 Fed Second 79, which discusses the issue of informational injury in the NEPA context. But it talks, as this Court just did, about eclipsing the need for a specific injury if you read public procedure statutes to allow for informational injury more broadly. Thank you. Thank you both for the excellent briefing and arguments this morning. The case just argued, Wilderness Society v. Ray, is submitted. Judge Hall, do you want us to keep going or would you like a break? Yes. I'm all right to keep going. All right. We'll keep going then. Our next case for argument is United States v. Webster.
judges: Hall, Thompson, McKeown